# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2459
_____

Capson Physicians Insurance Company

*Plaintiff - Appellant*

v.    (3:13-cv-00157-DPM)

MMIC Insurance Inc.

*Defendant - Appellee*

v.

MMIC Insurance Inc.

*Third Party Plaintiff*

Karl J. Hasik, M.D.; Lillian Wilson, Individually and as Special Administratrix for the Estate of J.A.W., deceased; Samantha Ray, Individually and as next friend and Guardian of A.L.R., a minor; Dereck Ray, Individually and as next friend and Guardian of A.L.R., a minor; Doe, A.L.R., a minor

*Third Party Defendant*s

_____

No. 15-2575
_____

Capson Physicians Insurance Company

*Plaintiff - Appellee*

v.

MMIC Insurance Inc.

*Defendant - Appellant*

v.

MMIC Insurance Inc.

*Third Party Plaintiff*

Karl J. Hasik, M.D.; Lillian Wilson, Individually and as Special Administratrix for the Estate of J.A.W., deceased; Samantha Ray, Individually and as next friend and Guardian of A.L.R., a minor; Dereck Ray, Individually and as next friend and Guardian of A.L.R., a minor; Doe, A.L.R., a minor

*Third Party Defendants*

_____

Appeals from United States District Court
for the Eastern District of Arkansas - Jonesboro

_____

Submitted: March 15, 2016
Filed: July 19, 2016

_____

Before WOLLMAN, BENTON, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

    Capson Physicians Insurance Company (Capson) filed a complaint against MMIC Insurance, Inc. (MMIC), in federal district court, seeking a declaration that MMIC was the primary professional liability insurer for Karl J. Hasik, M.D., and that

-2-

Capson was the excess insurer. MMIC counterclaimed and filed a third-party complaint against Dr. Hasik and others, seeking rescission of its insurance policy or, in the alternative, a declaration that MMIC had no obligation to defend or indemnify Dr. Hasik for two medical negligence cases that had been filed against him. The district court[1] granted MMIC's motion for summary judgment, concluding that MMIC was entitled to rescission under Iowa law. Capson now appeals from the adverse grant of summary judgment, and MMIC has filed a conditional cross-appeal. We affirm the judgment of the district court and dismiss the cross-appeal as moot.

I.  Background

Dr. Hasik is a physician who specializes in obstetrics and gynecology. In 2007, he opened his own practice in Paragould, Arkansas, and obtained professional liability insurance from State Volunteer Mutual Insurance Company (State Volunteer).

In 2012, Dr. Hasik accepted a position at Crawford County Memorial Hospital (the hospital) in Denison, Iowa. In anticipation of his move from Arkansas to Iowa, he purchased a claims-made professional liability insurance policy from Capson.[2] The Capson policy's effective period ran from July 27, 2012, to July 27, 2013, with

---

[1] The Honorable D.P. Marshall, Jr., United States District Judge for the Eastern District of Arkansas.

[2] A claims-made policy provides coverage for claims that are first made and reported to the insurer during the term of the policy, regardless of when the insured's alleged negligent act was committed. See 3 New Appleman on Insurance Law Library Edition § 16.07[5][a] (Jeffrey E. Thomas & Francis J. Mootz III eds., LexisNexis 2015). Insurers limit their exposure "by inserting a 'retroactive date' into the policy, prior to which the insured's acts are not covered." Id.

-3-

a retroactive date of January 2, 2007.  Because the Capson policy provided prior-acts coverage, Dr. Hasik did not purchase tail coverage from State Volunteer.[3]

After Dr. Hasik accepted the position at the hospital but before he began working there, Bill Bruce, the hospital's chief executive officer, submitted an application for insurance to MMIC, the hospital's insurer, seeking to add Dr. Hasik to the hospital's claims-made professional liability policy.  Mr. Bruce indicated on the application that Dr. Hasik was insured by Capson and that the Capson policy covered claims dating back to January 2007.  Mr. Bruce did not indicate whether the hospital was seeking prior-acts coverage from MMIC.

While the hospital was deciding whether to seek prior-acts coverage from MMIC or purchase tail coverage from Capson, Karen Hamilton, MMIC's agent, and Vera Ducept, MMIC's underwriter, exchanged emails regarding whether MMIC would provide prior-acts coverage for Dr. Hasik.  Ms. Hamilton explained that the hospital had "requested a tail quote from [Dr. Hasik's] current carrier" and that the hospital "need[ed] to determine which would be the better financial option, having the [MMIC] policy issued [with] prior acts or purchasing the tail."  Ms. Ducept responded that MMIC was willing to offer prior-acts coverage, quoting the premium for a first-year claims-made policy with a retroactive date of January 2, 2007.  Ms. Hamilton thereafter confirmed that MMIC would provide first-year coverage if the hospital forewent prior-acts coverage.  She also confirmed the cost of the premium for first-year coverage alone—that is, a policy that did not cover prior acts and thus had the same effective and retroactive date.  Ms. Ducept replied, "You got it."

---

[3]Tail coverage provides coverage for claims that are first made after the policy period expired, but that are based on conduct that occurred prior to the policy's expiration date.  See New Appleman on Insurance, *supra* note 2, § 16.07[5][d].

-4-

When Dr. Hasik began working for the hospital on October 29, 2012, he completed an application for professional liability insurance, which was then submitted to MMIC. The application asked about any claims that had been made against Dr. Hasik in the past that "ar[ose] out of the performance of professional services rendered or which should have been rendered by you." Dr. Hasik reported two medical malpractice lawsuits for incidents that had occurred in 1983 and 1997. He further reported that his former insurers had paid and closed those claims. When asked whether he was aware of any potential claims or circumstances that might reasonably lead to a claim or lawsuit being brought against him, Dr. Hasik responded, "No."

MMIC began insuring Dr. Hasik on November 1, 2012, with an effective date of October 31, 2012, which was the first day Dr. Hasik treated patients at the hospital. Dr. Hasik believed that he "had malpractice coverage insurance for prior acts not only from Capson but also from MMIC because of the application [he] had signed and sent in." Dr. Hasik testified, "I assumed that I was covered on both sides." The hospital, however, had not yet decided whether to purchase prior-acts coverage from MMIC.

According to Ms. Hamilton and Ms. Ducept, MMIC insured Dr. Hasik for any claims made against him for acts or omissions that occurred during his first year at the hospital, but did not insure him for any prior acts. Todd Thams, the hospital's insurance agent, also believed that Dr. Hasik and the hospital had decided to forego purchasing prior-acts coverage from MMIC, for Mr. Thams had sent an email on November 1, 2012, to Paula Cole, Mr. Bruce's executive assistant, requesting "proof of [Dr. Hasik's] tail coverage from Capson" showing a retroactive date of January 2007, "[s]ince he is not purchasing prior acts from MMIC." Mr. Thams also informed Ms. Cole that MMIC insured Dr. Hasik effective October 31, 2012, and advised her that "[t]he endorsement from MMIC will be issued after we receive the updated application and proof of tail coverage." The hospital did not provide proof of tail

coverage. Instead, it requested prior-acts coverage from MMIC on November 30, 2012.

In the meantime, Dr. Hasik was served with a complaint that alleged medical negligence. The lawsuit had been filed in Arkansas state court and was based on Dr. Hasik's June 20, 2011, delivery of the Wilson baby, who was stillborn. Dr. Hasik had treated the mother of the Wilson baby throughout her pregnancy, and he described the stillbirth as a "very unexpected adverse outcome." Six weeks after the delivery, Dr. Hasik received a request for medical records from the office of the attorney representing the mother. Dr. Hasik reviewed the request, and his office manager responded to it in November 2011. Approximately one year later, on November 16, 2012, Dr. Hasik was served with the Wilson complaint. Dr. Hasik hand-delivered a copy of the complaint to Ms. Cole, and he faxed a copy of the complaint to Capson on November 20, 2012. Upon receiving notice of the Wilson lawsuit, Capson agreed to defend Dr. Hasik under a reservation of rights. Neither Dr. Hasik nor the hospital reported the lawsuit to MMIC at that time.

On November 20, 2012, Ms. Cole emailed Mr. Bruce about a conversation she had with Mr. Thams. She informed Mr. Bruce that "MMIC [is] still waiting [for a] decision regarding tail coverage for Dr. Hasik. They will not/cannot issue a certificate of insurance for him until they either have proof of tail coverage or we engage them for prior acts." When Mr. Bruce, who had been on vacation, returned to the office on November 26, Ms. Cole handed him the Wilson complaint, among other papers. On November 30, Mr. Bruce notified Mr. Thams that the hospital decided to "go[] with MMIC current and prior acts insurance," instead of purchasing tail coverage from Capson. Mr. Bruce requested confirmation that "the process is now moving and (when it is issued) a certificate of his insurance."

Ms. Hamilton thereafter notified Ms. Ducept that "after much debate we are adding Dr. Hasik to the Crawford County policy with the prior acts coverage as

-6-

quoted. Please endorse the policy as soon as possible . . . ." On December 3, 2012, MMIC issued the endorsement, which had an effective date of October 31, 2012, and a retroactive date of January 2, 2007. Mr. Bruce received a copy of the endorsement on December 4, 2012, and when he sent it to Dr. Hasik later that day, Mr. Bruce suggested that the two of them "meet to talk about the case current[ly] in process and how to go about reporting it." Mr. Bruce notified MMIC of the Wilson lawsuit on December 7, 2012.

On January 22, 2013, Dr. Hasik was served with another complaint, which alleged medical negligence in his August 20, 2010, delivery of the Ray baby, who suffered neurological injuries during delivery or shortly after birth. Dr. Hasik had received a request for medical records in April 2012 from an attorney representing the parents of the Ray baby. His office manager disclosed medical records in June 2012. MMIC was notified of the Ray lawsuit on January 24, 2013, two days after Dr. Hasik had been served. MMIC ultimately issued denial letters to Dr. Hasik for both lawsuits and sought to rescind its coverage of Dr. Hasik.

Capson filed this lawsuit on June 20, 2013, seeking a declaration that MMIC was the primary insurer and that Capson was the excess insurer. MMIC filed a counterclaim against Capson and a third-party complaint against Dr. Hasik and others, seeking a declaration that the MMIC policy did not cover the claims made by the mother of the Wilson baby and by the parents of the Ray baby. MMIC alleged that because Dr. Hasik was aware or reasonably should have been aware of potential claims by Ms. Wilson and Mr. and Mrs. Ray before October 31, 2012, the effective date of his insurance coverage, those claims were not first made during the policy period. MMIC's third-party complaint also sought rescission of the insurance policy, claiming that "Dr. Hasik made material misrepresentations that were intended to and did induce MMIC to provide him with professional liability coverage subject to a July 1, 2007 [sic] retroactive date." Capson later amended its complaint to seek alternative

-7-

relief, namely rescission of its policy or a declaration that its policy excluded coverage for the Wilson and Ray lawsuits.

The parties cross-moved for summary judgment. MMIC argued, among other things, that Dr. Hasik's failure to notify MMIC that he had been served with the Wilson complaint constituted a material misrepresentation of fact that entitled MMIC to rescind the prior-acts coverage it had issued to Dr. Hasik. In support of its argument, MMIC cited the doctrine of *uberrimae fidei*, which "requires that parties to an insurance contract must accord each other the highest degree of good faith." See St. Paul Fire & Marine Ins. Co. v. Abhe & Svoboda, Inc., 798 F.3d 715, 717 (8th Cir. 2015).

Following a hearing on the motions, the district court rendered its decision orally. Applying Iowa law, the district court determined that Dr. Hasik was not aware of a potential claim when he completed his application for MMIC insurance in October 2012. Nor were the circumstances such that Dr. Hasik reasonably should have been aware of the claims when he completed his application:

> Would an applicant have reasonably understood that there was a potential claim here? Taking all of the facts, I don't believe so. . . . These record requests for both cases are generic. There is nothing about medical malpractice. There is nothing about investigating the circumstances of either the stillbirth or the birth of the Ray child.
>
> The execution of affidavits so one doesn't have to appear at a proceeding . . . even further downplays the significance of how a reasonable doctor would have looked at the requests. There is nothing about representation or investigation of a medical malpractice claim. There is nothing about notifying your carrier. These are milquetoast requests done in one case by a paralegal, another signed by the lawyer that -- I just do not think, in combination with all the circumstances for each of the births, that there was enough to . . . put a reasonable person on notice of a claim.

-8-

As an alternative ruling, the district court determined that because MMIC failed to attach Dr. Hasik's application to the policy itself, in violation of Iowa code sections 515.133 and 515.134, MMIC was barred from rescinding its prior-acts coverage based on representations Dr. Hasik made in his application.

The district court ultimately ruled in favor of MMIC, however, because Dr. Hasik and the hospital failed to timely disclose the fact that Dr. Hasik had been served with the Wilson lawsuit:

> Dr. Hasik and the hospital . . . were under a continuing obligation to disclose newly discovered facts that were material to the risks that MMIC was considering undertaking on the prior acts coverage and . . . Dr. Hasik and the hospital's not providing the Wilson suit papers to MMIC in the period of time, when it was unclear whether MMIC would be providing this prior act coverage, justifies, supports, and indeed compels [rescission] of the prior acts coverage conditioned, of course, on MMIC returning the premium that was involved.
>
> I cannot say that a doctrine, although we have discussed it here -- uberrima fides or fidei -- it seems to me that the common law background here requires the applicant to disclose material changes in circumstances while the company is deliberating whether to provide the coverage or not.

The district court thereafter entered judgment in favor of MMIC and dismissed the remaining claims.

## II. Discussion

We review *de novo* the district court's grant of summary judgment. <u>PHL Variable Ins. Co. v. Fulbright McNeill, Inc.</u>, 519 F.3d 825, 828 (8th Cir. 2008). Summary judgment is appropriate if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter

of law. Fed. R. Civ. P. 56(a). We apply state substantive law in this diversity action, see PHL Variable Ins. Co., 519 F.3d at 828, and Capson has not challenged the district court's determination that Iowa law applies in this case.

We begin our analysis with a review of Iowa law on equitable rescission. "When a party claims that he has been induced to enter into a contract based on the other contracting party's misrepresentation, he may seek to avoid the contract by suing for rescission using the misrepresentation as a basis for the requested relief." Hyler v. Garner, 548 N.W.2d 864, 870 (Iowa 1996). To succeed on an equitable-rescission claim based on misrepresentation, a plaintiff must prove the following five elements: "(1) a representation, (2) falsity, (3) materiality, (4) an intent to induce the other to act or refrain from acting, and (5) justifiable reliance." Id. at 872.

The Iowa Supreme Court has "recognized that in some instances a failure to disclose material facts may be the equivalent of a false assertion." City of Ottumwa v. Poole, 687 N.W.2d 266, 269 (Iowa 2004) (citing First Nat'l Bank in Lenox v. Brown, 181 N.W.2d 178, 182 (Iowa 1970)); see also Sinnard v. Roach, 414 N.W.2d 100, 105 (Iowa 1987) ("A representation need not be an affirmative statement; it can arise as easily from a failure to disclose material facts."); Cornell v. Wunschel, 408 N.W.2d 369, 374 (Iowa 1987) ("[F]ailure to disclose a material fact can constitute fraud in Iowa."). In deciding whether a party's failure to disclose constitutes a false assertion, the court has quoted at length from the Restatement (Second) of Contracts, which provides, in relevant part:

> A person's non-disclosure of a fact known to him is equivalent to an assertion that the fact does not exist in the following cases only:
>
> (a) where he knows that disclosure of the fact is necessary to prevent some previous assertion from being fraudulent or material.

-10-

> (b) where he knows that disclosure of the fact would correct a mistake of the other party as to a basic assumption on which that party is making the contract and if non-disclosure of the fact amounts to a failure to act in good faith in accordance with reasonable standards of fair dealing.

Poole, 687 N.W.2d at 269 (quoting Restatement (Second) of Contracts § 161 (1981)).

The Iowa Supreme Court also has recognized that a duty to disclose material facts may arise even in arms-length transactions, particularly when one party has superior knowledge of material facts. See Wright v. Brooke Grp., Ltd., 652 N.W.2d 159, 174 (Iowa 2002) (stating that Iowa courts have "recognized a duty to disclose in situations where the plaintiff and the defendant were involved in some type of business transaction, such as buyer/seller or owner/contractor").

> It is true that ordinarily mere silence in an arms-length transaction does not serve to create actionable fraud. This is not the case, though, where one party has superior knowledge of the facts, resulting in an inequality of condition or knowledge between the parties. The party with superior knowledge then has the duty to disclose those material facts which may be favorable to him and unfavorable to the other party.

Smith v. Peterson, 282 N.W.2d 761, 767 (Iowa 1979) (internal citations omitted). A "legal duty to communicate to the other contracting party" thus may arise "from inequality of condition and knowledge." Sinnard, 414 N.W.2d at 105 (quoting Wilden Clinic, Inc. v. City of Des Moines, 229 N.W.2d 286, 293 (Iowa 1975)); see also Cornell, 408 N.W.2d at 374 ("To be actionable, the concealment must be by a party under a duty to communicate the concealed fact.").

We conclude that Dr. Hasik's and the hospital's nondisclosure of the Wilson lawsuit was the equivalent of a false assertion. The claim made against Dr. Hasik constituted a significant change that affected the risk that MMIC was offering to underwrite. It also rendered part of Dr. Hasik's application untrue. MMIC believed

-11-

that it was offering prior-acts coverage to a doctor who had been sued for medical malpractice twice during his decades-long career, most recently in 1997. That Dr. Hasik did not have any claims then pending against him was a basic assumption upon which MMIC relied in determining whether to issue the policy. Unbeknownst to MMIC, however, a claim was pending against Dr. Hasik when the hospital finally decided to purchase prior-acts coverage for him. Absent disclosure by Dr. Hasik or the hospital, MMIC unwittingly agreed to undertake both the burden of defending Dr. Hasik against the claim and the risk of having to pay an award to the claimant. It is undisputed that MMIC would not have issued prior-acts coverage to Dr. Hasik had it known about the Wilson lawsuit. In light of these circumstances, even "the most elementary spirit of fair dealing" seems to require disclosure. See Stipcich v. Metro. Life Ins. Co., 277 U.S. 311, 317 (1928). We thus conclude that because Dr. Hasik and the hospital had superior knowledge of the material facts, they had a duty to disclose the Wilson lawsuit to MMIC after Dr. Hasik was served and before MMIC issued prior-acts coverage. See generally 6 Couch on Insurance 3d § 84:8 (Thompson Reuters/West rev. ed. 2012) ("Known changes in conditions material to the risk that occur between the opening of negotiations for insurance and the issuance of the policy generally must be divulged.").

In concluding that Iowa law placed a duty upon Dr. Hasik and the hospital to disclose the Wilson lawsuit to MMIC, we find the Stipcich decision to be instructive. Anton Stipcich, "after applying for the insurance and before the delivery of the policy and payment of the first premium, suffered a recurrence of a duodenal ulcer, which later caused his death." Stipcich, 277 U.S. at 315. He did not report the ulcer's recurrence to the insurance company. The United States Supreme Court concluded that Stipcich had a duty to disclose that information, stating that "[i]nsurance policies are traditionally contracts uberrimae fidei and a failure by the insured to disclose conditions affecting the risk, of which he is aware, makes the contract voidable at the insurer's option." Id. at 316. After acknowledging the relaxation of this rule in light

of the practice of requiring the applicant to answer questions prepared by the insurer, the Court explained:

> But the reason for the rule still obtains, and with added force, as to changes materially affecting the risk which come to the knowledge of the insured after the application and before delivery of the policy. For even the most unsophisticated person must know that, in answering the questionnaire and submitting it to the insurer, he is furnishing the data on the basis of which the company will decide whether, by issuing a policy, it wishes to insure him. If, while the company deliberates, he discovers facts which make portions of his application no longer true, the most elementary spirit of fair dealing would seem to require him to make a full disclosure. If he fails to do so the company may, despite its acceptance of the application, decline to issue a policy, or, if a policy has been issued, it has a valid defense to a suit upon it.

Id. at 316-17 (footnote and citations omitted). The reasoning in Stipcich applies here, perhaps with greater force, considering that any delay in MMIC's endorsement of prior-acts coverage was caused by the hospital's failure to promptly decide to purchase it.

Capson argues that the district court erred in applying the doctrine of *uberrimae fidei*, because the doctrine conflicts with Iowa law, which places the burden on the insurer to seek information, construes doubts in favor of the insured, precludes rescission when the insurer's questions have been answered truthfully, and does not permit courts "to rewrite insurance contracts based upon amorphous policy considerations." While these general statements of law may be true, none of the cases cited by Capson addresses the factual situation we have here. In light of Iowa law permitting equitable rescission based on misrepresentation—even in arms-length transactions—we find no error in the district court's passing mention of the doctrine of *uberrimae fidei*. Although the Iowa Supreme Court has not used that Latin term, it has recognized that in some cases a party with superior knowledge is obligated to

-13-

disclose material information. That the MMIC application did not instruct the applicant to update material information did not relieve the applicant of the obligation to do so. We believe that the Iowa Supreme Court would impose a duty to disclose in this case, where MMIC's application had asked about any claims or potential claims against Dr. Hasik, who truthfully answered that there were no claims pending, and then, while the hospital was considering its insurance options and before it decided to purchase coverage from MMIC, Dr. Hasik and the hospital became aware of a claim made against Dr. Hasik. See Stipcich, 277 U.S. at 318 ("The obligation was not one stipulated for by the parties, but is one imposed by law as a result of the relationship assumed by them and because of the peculiar character of the insurance contract.").

In sum, we hold that the elements of equitable rescission were satisfied in this case. Dr. Hasik's and the hospital's nondisclosure of the Wilson lawsuit was the equivalent of a material representation that was false. The parties have not disputed the remaining elements of equitable rescission, and we thus conclude that MMIC was entitled to rescind the prior-acts coverage it had agreed to provide.[4]

We further hold that Iowa code sections 515.133 and 515.134 do not preclude a judgment of rescission in this case. Section 515.133 requires that an insurer provide to the insured a true copy of the insured's application or representations. Section 515.134 states that an insurer's failure to do so precludes it "from pleading, alleging, or proving any such application or representations, or any part thereof, or falsity thereof, or any parts thereof, in any action upon such policy." These statutes have

---

[4]We find no merit to Capson's arguments that the district court decided MMIC's motion for summary judgment on grounds not raised by MMIC, for MMIC argued in its memorandum of law in support of its motion for summary judgment that "Dr. Hasik's failure to advise MMIC that he had been sued by Wilson for malpractice constitute[d] a material misrepresentation of fact that entitle[d] MMIC to rescind his individual coverage as a matter of law."

been construed strictly "to mean that an insurance company cannot rely defensively on the falsity of a statement in an application or on a condition set out in an application unless the signed application or an exact copy is attached to the policy." St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp., No. C00-4080, 2000 WL 33915816, at *19 (N.D. Iowa Nov. 20, 2000).  They do not address any nondisclosure of facts that arise after the submission of an application, however.  See N.Y. Life Ins. Co. v. Gay, 36 F.2d 634, 637 (6th Cir. 1929).  Even setting aside the fact that service of the Wilson lawsuit rendered part of Dr. Hasik's application untrue, whether a lawsuit was pending against Dr. Hasik was material to the risk for which he sought coverage.  That no lawsuit was pending against Dr. Hasik was a fact basic to the transaction and an assumption upon which MMIC relied.

    The judgment is affirmed.  The cross-appeal is dismissed as moot.

_____

# United States Court of Appeals
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

July 19, 2016

Mr. Richard Brent Cooper
COOPER & SCULLY
Suite 100
900 Jackson Street
Dallas, TX  75202-0000

      RE:  15-2459 Capson Physicians Insurance Co v. MMIC Insurance Inc.
           15-2575 Capson Physicians Insurance Co v. MMIC Insurance Inc.

Dear Counsel:

    The court has issued an opinion in this cases. Judgment has been entered in accordance with the opinion. The opinion will be released to the public at 10:00 a.m. today. Please hold the opinion in confidence until that time.

    Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. No grace period for mailing is allowed, and the date of the postmark is irrelevant for pro-se-filed petitions. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

                                        Michael E. Gans
                                        Clerk of Court

YML

Enclosure(s)

cc:     Robin Donsky
        Mr. Christopher M. Dougherty
        Mr. Bradley G. Dowler
        Ms. Diana L. Faust
        Ms. Suzanne Louise Jones
        Mr. Jim McCormack
        Mr. Scott Dennis Provencher
        Mr. Steven W. Quattlebaum
        Ms. Paulette Steffes Sarp
        Mr. Robert J. Witmeyer
        Mr. Robert Ryan Younger

        District Court/Agency Case Number(s):   3:13-cv-00157-DPM
                                                                   3:13-cv-00157-DPM

# United States Court of Appeals
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

July 19, 2016

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

      RE:  15-2459  Capson Physicians Insurance Co v. MMIC Insurance Inc.
           15-2575  Capson Physicians Insurance Co v. MMIC Insurance Inc.

Dear Sirs:

    A published opinion was filed today in the above cases.

    Counsel who presented argument on behalf of the appellant/cross-appellee was Richard Brent Cooper, of Dallas, TX. The following attorney(s) appeared on the appellant/cross-appellee brief;  Scott Dennis Provencher, of Little Rock, AR.,  Diana L. Faust, of Dallas, TX.,  Robert J. Witmeyer, of Dallas, TX.

    Counsel who presented argument on behalf of the appellee/cross-appellant was Paulette Steffes Sarp, of Minneapolis, MN. The following attorney(s) appeared on the appellee/cross-appellant brief;  Steven W. Quattlebaum, of Little Rock, AR.,  Robert Ryan Younger, of Little Rock, AR.,  Christopher M. Dougherty, of Minneapolis, MN.

    The judge who heard the case in the district court was Honorable D. Price Marshall. The judgment of the district court was entered on June 1, 2015.

    If you have any questions concerning these cases, please call this office.

                                                 Michael E. Gans
                                                 Clerk of Court

YML

Enclosure(s)

cc:  MO Lawyers Weekly

           District Court/Agency Case Number(s):  3:13-cv-00157-DPM
                                                       3:13-cv-00157-DPM